Filed 11/14/25  In re Noah M. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re NOAH M., a Person Coming Under the Juvenile Court Law. | B343080 (Los Angeles County Super. Ct. No. 23CCJP03936) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff, v. PATRICIA G., Defendant and Appellant; CARLOS M., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark L. Tseselsky for Defendant and Respondent.

_____

Defendant and appellant Patricia G. (mother) and defendant and respondent Carlos M. (father) have one child together, Noah M. (born in 2017).  The juvenile court asserted dependency jurisdiction over Noah because father had assaulted mother in Noah's presence on multiple occasions.  Approximately nine months after the combined jurisdiction and disposition hearing, the court terminated dependency jurisdiction with an order awarding the parents joint legal and physical custody of Noah.  The order permits each parent to have physical custody of the child for alternating seven-day periods.  Prior to issuance of the custody order, father was entitled to unsupervised visitation with Noah every first and third weekend of the month from Thursday through Monday.

On appeal, mother contests the award of joint physical custody to the parents on two grounds:  (1) The juvenile court violated mother's free speech and due process rights by directing the parties to select from among three potential physical custody arrangements, thereby preventing mother from making "her own determination and arguments to the court" on that issue; and (2) the court abused its discretion in finding joint physical custody was in Noah's best interest because Noah expressed his desire to continue to live with mother and visit father, father indicated he was not ready for joint physical custody, and mother ably cared for Noah.

2

First, mother's claims of constitutional error fail because the court allowed her to present her arguments as to the proper physical custody arrangement for Noah. The court directed the parties to address three alternative physical custody orders only *after* mother had an opportunity to advocate for her position on physical custody. Second, mother fails to demonstrate error under the deferential abuse of discretion standard that governs our review of the custody order. We thus affirm.

## PROCEDURAL BACKGROUND[1]

We summarize only those facts relevant to our disposition of this appeal.

On November 16, 2023, the Los Angeles County Department of Children and Family Services (DCFS or the agency) filed a dependency petition asserting jurisdiction over then six-year-old Noah M. pursuant to Welfare and Institutions Code[2] section 300.[3] As later sustained by the juvenile court, the dependency petition alleged a single count under section 300,

---

[1] We derive our Procedural Background in part from admissions made by the parties in their filings and assertions advanced by the respondent (father) that the appellant (mother) does not dispute in her reply. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2, 773–774 (*Association for Los Angeles Deputy Sheriffs*) [utilizing this approach].)

[2] Undesignated statutory references are to the Welfare and Institutions Code.

[3] DCFS also sought dependency jurisdiction over Noah M.'s older maternal half sibling, Sophia G. The juvenile court's orders concerning Sophia G. are not at issue in this appeal.

subdivision (b)(1), which averred: "The children, Sophia G[.]'s and Noah M[.]'s mother . . . and the mother's male companion . . . [father] . . . , have a history of engaging in violent physical altercations in the presence of the children. On multiple occasions[,] . . . father struck . . . mother resulting in . . . mother sustaining bruises. On 08/25/2023, . . . father was arrested for . . . father's conduct.[4] The violent conduct by . . . father . . . against . . . mother[ ] endangers the children's physical health and safety, creates a detrimental home environment, and places the children at risk of serious physical harm, damage, danger, and failure to protect." The juvenile court clarified in a minute order that mother is "nonoffending in the petition."

According to the detention report filed on November 16, 2023, mother and father reported to DCFS that prior to the filing of the dependency petition, a trial court had granted father unsupervised visits with Noah every first and third weekend of the month from Thursday through Monday. At the initial hearing held on December 4, 2023, the juvenile court ordered the parents to continue to adhere to that visitation schedule.

In March 2024, the juvenile court (1) sustained the jurisdictional count concerning father's perpetration of violent acts against mother; (2) declared Noah a dependent of the court; (3) released Noah to his parents' custody "on the condition that they don't live together and cooperate[ ] with the [agency]"; (4) ordered father to participate in certain services, including parenting and domestic violence programs; (5) declared "[a]ll

_____

    **4** The criminal court ultimately granted father diversion and ordered him to complete a domestic violence treatment program and individual counseling.

4

prior orders not in conflict shall remain in full force and effect"; and (6) scheduled a section 364 review hearing for September 5, 2024.

At that section 364 review hearing, the juvenile court found by a preponderance of the evidence that conditions still existed justifying assumption of dependency jurisdiction over Noah, scheduled another section 364 review hearing for December 5, 2024, and declared, "All prior orders not in conflict shall remain in full force and effect."[5]  On September 9, 2024, the juvenile court issued a restraining order protecting mother from father; the order expires in 2027 and does not bar father from communicating with mother about custody exchanges.

The juvenile court held the next section 364 review hearing on December 5 and 12, 2024, which proceeding we describe in greater detail in our Discussion, parts A–B, *post*.  On December 12, 2024, the court awarded mother and father joint legal and physical custody of Noah, with each parent having physical custody for alternating seven-day periods subject to a specified schedule for holidays.  The court thereafter issued a juvenile custody order memorializing its rulings and terminated dependency jurisdiction.

Mother timely appealed from the juvenile custody order.

---

[5]  "At a section 364 review hearing, '[t]he court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn.' [Citation.]"  (*In re D.N.* (2020) 56 Cal.App.5th 741, 755, fn. 10.)

5

## APPLICABLE LAW AND STANDARD OF REVIEW

"When 'the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . the juvenile court on its own motion[ ] may issue . . . an order determining the custody of, or visitation with, the child.' [Citation.]" (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094 (*N.M.*), quoting § 362.4, subd. (a).) This custody/visitation order, which is "commonly referred to as an 'exit order[,]'[ ] . . . will become part of the relevant family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.'" (See *In re T.S.* (2020) 52 Cal.App.5th 503, 513, fn. omitted.) " 'When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child.' [Citations.]" (*N.M.*, at p. 1094.)

"We review a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion . . . ." (*N.M., supra,* 88 Cal.App.5th at p. 1094.) " ' " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " ' [Citation.]" (*In re Juan A.* (2024) 106 Cal.App.5th 1204, 1208 (*Juan A.*).)

## DISCUSSION

### A. Mother Fails To Demonstrate the Juvenile Court Violated Her Free Speech and Due Process Rights By Directing the Parties To Address Three Alternative Custody Arrangements for Noah

Mother argues: "[A]t the contested section 364 [proceeding held in December 2024], the juvenile court violated mother's freedom of speech under the First Amendment and substantive and procedural due process rights under the Fourteenth

6

Amendment of the US Constitution when it limited her . . . to only select one of three physical custody arrangements the court offered at the contested section 364 [proceeding], completely ignoring the actual arguments mother and other parties made with regard to their desired custody orders when terminating jurisdiction over Noah." Mother contends the juvenile court "thereby violat[ed] . . . [her] . . . freedom of speech to make her own determination and arguments to the court, and fair and meaningful access to the courts as the court became a quasi-litigator, selecting the arguments the parties could make." The record does not support these arguments.

As a preliminary matter, mother maintains we should review her claims of constitutional error de novo. We assume solely for the purpose of this appeal that mother identifies the correct appellate standard. "[R]egardless of the applicable standard of review," "[t]he appellant bears th[e] burden of rebutting the presumption of correctness accorded to the [lower] court's decision . . . ." (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 777.) To discharge this burden, the appellant must support the positions taken with " ' "reasoned argument and citations to authority . . . ." ' [Citation.]" (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79–80 & fn. 5.)

The record belies mother's assertion the juvenile court acted as a "quasi-litigator" by preventing her from "mak[ing] her own . . . arguments to the court . . . ." The reporter's transcript from the proceedings held on December 5, 2024 shows the juvenile court directed the parties to consider three alternative physical custody arrangements for Noah *after* the court had admitted the parties' exhibits into evidence and heard each

7

party's views as to the appropriate physical custody order.**6** The three alternatives identified by the court were: (1) Each parent has custody of Noah for "alternate weeks all year long" with "some little adjustments for Mother's day or birthdays"; (2) father's parenting time would alternate between father having Noah from Wednesday afternoon through Monday morning one week and Wednesday to Thursday the following week; and (3) father would have Noah on Wednesday and drop him off at school on Thursday morning, and each parent would have Noah on alternating weekends starting on Friday afternoon, with the court "split[ting] up the . . . . school holidays[ and] summer holidays, starting with 50/50 but trying to give father a bit more time." The reporter's transcript for the proceedings held on December 12, 2024 reveals the court allowed the parties to present argument on which of the three physical custody arrangements they preferred.

---

**6** At the outset of the December 5, 2024 hearing, the juvenile court admitted into evidence certain agency reports, mother's co-parenting certificate and a letter accompanying the certificate, and father's exhibit number 1. DCFS, Noah's counsel, and mother's counsel thereafter presented their views on the proper physical custody arrangement for Noah. Shortly thereafter, father's counsel clarified that his client was seeking a "50/50" custody arrangement. Mother's counsel subsequently presented argument in support of her request for sole physical custody, and father's counsel likewise presented argument supporting his request for a "50/50" custody arrangement. Later on during the December 5, 2024 proceeding, the juvenile court identified three alternative physical custody plans and instructed the parties to consider these alternatives.

Accordingly, the juvenile court did not hinder mother's ability to present her case. The court allowed the parties to present their respective recommended custody arrangements. The court then informed mother and the other parties that it was inclined to select one of three potential physical custody arrangements and afforded them an opportunity to address those options. Because we reject the factual underpinnings of mother's free speech and due process claims, her arguments fail.

In an apparent attempt to resuscitate these claims of error, mother argues in her reply brief that our decision in *In re Cole Y.* (2015) 233 Cal.App.4th 1444 (*Cole Y.*) supports her position the juvenile court violated her constitutional rights. In *Cole Y.*, a juvenile court issued an exit order that awarded a child's mother sole physical custody and granted his father monitored visitation. (See *Cole Y.*, at p. 1446.) We reversed the exit order insofar as it purported to bar the family court from modifying the custody and visitation provisions unless the father completed certain programs. (See *ibid.*) We reasoned, "Under section 302, subdivision (d), the decision to modify an exit order was, and is, within the province of the family court, and then only upon a finding of 'significant change of circumstances' and that the modification is in 'the best interests of the child.'" (See *Cole Y.*, at p. 1456, quoting § 302, subd. (d).)

We did not address any free speech, due process, or other constitutional claims in *Cole Y.* (See, e.g., *Cole Y.*, *supra*, 233 Cal.App.4th at p. 1446 [noting the father had contested (1) the evidentiary sufficiency of the juvenile court's jurisdictional findings, and (2) the provision of the exit order conditioning modification thereof on the father's completion of certain programs].) Nevertheless, mother argues that *Cole Y.* is

9

"instructive" because, "if the juvenile court cannot instruct the family court how to rule, it certainly cannot instruct parties how to argue their case or limit their arguments to three pre-selected arguments." (Boldface & capitalization omitted from second quotation.) As set forth above, the juvenile court permitted mother to advocate for her position on physical custody and thereafter allowed her to address three alternative potential custody orders.

For these reasons, we conclude that mother has not shown the juvenile court infringed on her free speech and due process rights.

## B. Mother Does Not Show the Juvenile Court Abused Its Discretion In Awarding Joint Physical Custody of Noah to Mother and Father

Mother contends the juvenile court abused its discretion in awarding joint physical custody. She claims, "[T]he joint physical custody order was . . . not in Noah's best interests[ because] it was vehemently objected to by mother, even father did not want such responsibility, and Noah clearly wanted to continue living with mother and visiting father as" was provided "in [the] then active family law order." These arguments fail under the deferential appellate standard that governs our review.

To support her assertion that father did not want joint physical custody, mother claims, "[F]ather wrote to the social worker [that he sought] . . . to keep the status quo with only an addition of one overnight on his weeks, Wednesday to Monday, and one Wednesday overnight during the weeks he did not have custody." She also claims that at the December 12, 2024 hearing, "father's counsel informed the court that '[o]ption 2 [is] honestly . . . the best option given the three alternatives

10

[identified by the juvenile court],' " which option "offered [father] less custody time[ than a] 50/50 split . . . ."[7]

Notwithstanding mother's argument to the contrary, the e-mail from father to the social worker that mother cites does not show father felt unready for an order awarding him joint physical custody. In the correspondence, father stated his "strong preference [was] for a 50/50 parenting plan." Father stated he was "offering [a] compromise" short of a 50/50 parenting plan "as a good faith effort" to "[f]ocus on Noah's needs and at the same time be patient with and help create a new normal with" mother.

That father's counsel requested the juvenile court's second physical custody option likewise does not show his client was unprepared for joint physical custody. Indeed, shortly before the December 12, 2024 hearing, father submitted a declaration in which he expressed his concern that awarding each parent custody of Noah for alternating seven-day periods "would reduce the frequency of [father's] meaningful interactions" with Noah. Father stated he believed the court's second option would provide more "continuity and stability" for Noah than a "7-on/7-off schedule," even though the former would provide father with less parenting time.

As for Noah's wishes, mother directs us to an excerpt from the section 364 status review report filed on November 22, 2024 in which the agency remarked, "Noah continues to state that he

---

[7] As we noted in our Discussion, part A, *ante*, the second potential physical custody arrangement identified by the juvenile court would have alternated on a weekly basis between permitting father to have parenting time with Noah from Wednesday afternoon through Monday morning one week and Wednesday to Thursday the next week.

likes his visits with his father and living with his mom." The juvenile court interpreted this passage from the report as follows: "It is merely stating he likes his visits with father and living with mom, but it is not clear he is stating a preference for that arrangement." We defer to the juvenile court's finding on this point. (See *N.M.*, *supra*, 88 Cal.App.5th at p. 1094 [" ' " 'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority [under the abuse of discretion standard] to substitute its decision for that of the trial court.' " ' "].)[8]

Mother also claims DCFS's reports show mother was " 'very affectionate and loving toward her son[,]' " and "Noah did well in mother's care[,] . . . was healthy and happy, . . . attend[ed] weekly counseling," and " 'appear[ed] to be . . . content living with his mother.' " Assuming arguendo mother is correct that Noah was thriving in her care, that fact does not undermine the juvenile court's decision to award mother and father joint physical custody.

Lastly, the juvenile court stated its rationale for awarding the parents joint physical custody of Noah with each parent having the child on alternating weeks. The court explained this

---

[8] Mother also cites part of the section 364 status review report DCFS filed on August 20, 2024 and an attachment to the section 364 status review report filed on November 22, 2024 for the proposition that "Noah repeatedly and consistently stated to the social worker and his own counsel that he wanted to live with mother and visit father as is, which was 1st and 3rd weekend of the month, from Thursday at 4 pm [to] Monday [at] 8 am." These excerpts, however, do not show that Noah had expressed a desire to live with mother and continue visiting father in accordance with the then-operative visitation schedule.

joint custody arrangement "gives father the advantage of being able to stay involved with the school and [Noah's] midweek activities," affords father "plenty of time to interact [with Noah] during the school year," and is a "straightforward . . . clear 50/50 arrangement." The court further noted the "complexity" of the other potential custody arrangements would "be confusing to Noah" and could "be used by one or other party to try and get something more . . . ." In addition, the court explained it had rejected mother's request for sole physical custody because "father has been having overnight . . . and unmonitored visits," "father has done the services [ordered by the court] and . . . shown a change," "[Noah] has a good relationship with father[,] and . . . father has been safe with the child . . . ." Mother does not challenge these findings. In light of these uncontested findings, we conclude the juvenile court did not " ' " 'exceed[ ] the bounds of reason' " ' " in ruling that an award of joint physical custody was in Noah's best interest. (See *Juan A.*, *supra*, 106 Cal.App.5th at p. 1208 [describing the abuse of discretion standard].)

## DISPOSITION

We affirm the juvenile court's order awarding joint physical custody of Noah M. to defendant and appellant Patricia G. and defendant and respondent Carlos M.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.

We concur:


WEINGART, J.                    M. KIM, J.


13